**IN THE UNITED STATES DISTRICT COURT7**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

RUTH NORTEY,                                    )
                                                )
              Plaintiff,                        )
                                                )
v.                                              )        Case No. 19-CV-523-TCK-CDL
                                                )
ST. JOHN MEDICAL CENTER INC., and               )
ASCENSION ST. JOHN d/b/a ST. JOHN               )
HEALTH SYSTEM, INC.,                            )
                                                )
              Defendants,                       )

## <u>OPINION AND ORDER</u>

Before the Court is the Motion for Summary Judgment filed by defendants St. John

Medical Center, Inc. ("Medical Center") and Ascension St. John d/b/a St. John Health System,

Inc. ("St. John") (collectively, the "Defendants"). Doc. 59.  Plaintiff Ruth Nortey ("Plaintiff"),

acting *pro se*,[1] opposes the motion.  Docs. 63, 126.[2]

### I.  Background

Plaintiff, a former Medical Assistant for St. John, suffered shoulder and wrist injuries and

carpal tunnel syndrome.  Due to the business need to fill her position, her employment was

terminated while she was on an unprotected, indefinite leave of absence. Plaintiff's Second

Amended Complaint asserts claims for a racially hostile work environment; termination of her

---

[1] Plaintiff was initially represented by attorneys Frank W. Frasier and Kathryn Black, with the firm of Frasier, Frasier & Hickman, LLP.  On August 24, 2020, Plaintiff's counsel filed a Motion to Withdraw, stating that Plaintiff had terminated their representation of her and intended to proceed *pro se.*  Doc. 32.  The Court subsequently granted the motion.  Doc. 33.

[2] Plaintiff titled her response to Defendants' motion as "Plaintiffs Motion for Summary Judgment and Brief in Support."  Doc. 63.

employment based on her national origin, race, medical disability; and retaliation for physical accommodation in her job.  Doc. 25 at 2-3.

In their Motion for Summary Judgment, Defendants contend that the decision to terminate Plaintiff had nothing to do with discrimination based upon her race, national origin or disability or retaliation for alleged protected activity, and that Plaintiff has failed to establish a claim of harassment or hostile work environment.  Doc. 59.

## II.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant bears the burden of showing that no genuine issue of material fact exists.  *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006).  The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.*  However, the party opposing a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The party opposing a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v.  Catrett*, 477 U.S. 317, 323-33 (1986).

A movant who "will not bear the burden of persuasion at trial need not negate the nonmovant's claim, "but may "simply . . . point[] out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal citations omitted).  If the movant makes this prima facie showing, "the burden shifts to the nonmovant to go beyond the pleadings and 'set forth

specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013 (1992)). "In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial. The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome convincing presentation by the moving party." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (internal citations omitted).

### III.  Material Facts

Plaintiff is a native of Ghana who immigrated to the United States and is now  a citizen of this country. Doc. 59, Ex. 1, Nortey Dep. at 32:25-33:1, 34:11-14, 104:22-25.  In or about 2001, Plaintiff was hired by St. John Health System, Inc.'s predecessor as a Patient Care Assistant, and she eventually became a Medical Assistant. *Id.* at 108:17-109:1.  In her role as a Medical Assistant, she was responsible for performing clinical duties, interviewing patients, measuring vital signs, charting patient information, preparing treatment rooms for patients, performing basic clerical duties such as answering phones and filing, ordering and stocking supplies, maintaining a clean environment, and documenting provider encounters with patients. *Id.*, Ex. 2-1, Job Description.

Plaintiff took three medical leaves of absence during her employment with St. John.  Her first leave, which was for right shoulder surgery to repair a rotator cuff tear, occurred from November 10, 2016 through March 29, 2017.  *Id.*, Ex. 2, Jennifer Workman Affid., ¶7(a).  Her second leave for right shoulder and wrist injuries occurred from September 19, 2017 through April 16, 2018. *Id.*, ¶7(b). Her third leave for right carpal tunnel syndrome commenced on August 29,

3

2018. *Id.*, ¶7(c). On December 16, 2018, Plaintiff's employment was terminated after she had exhausted all available protected leave. *Id.*, ¶¶7(c), 19.

When Plaintiff returned to work after her second leave on April 17, 2018, she had a lifting restriction of no greater than 10-15 pounds. Ex. 1, Nortey Dep. at 155:3-15. St. John accommodated the lifting restriction, in part, by assigning her to answer phones, which Plaintiff complained was "tedious" and made her nauseated. *Id.* at 207:18-208:8, 212:17-214:22.

No one prohibited Plaintiff from taking lunch, although—like the other Medical Assistants—she might have to adjust her lunch due to business needs such as phone coverage and rooming patients. *Id.*, Ex. 2, ¶18.

On June 13, 2018, Plaintiff complained to Sherri DeLuca ("DeLuca"), the Physician Practice Manager, that Victoria Jackson ("Jackson"), the Nursing Director, had called her into a room and told her she was "a bit slow" and that she should move five to six patients per hour. *Id.*, Ex. 1, Nortey Dep. at 62:9-63:16.[3] At that time, she made no mention of any protected class status. *Id.*

August 28, 2018 was Plaintiff's last day of work before she took her third leave. She did not return to work at St. John. *Id.*, Ex. 2, ¶¶7(c), 19.

During Plaintiff's previous leaves, other Medical Assistants had been covering for her. However, due to the number of physicians and normal turnover, St. John had a business need to hire additional Medical Assistants in order to keep up with the business demand. *Id.*, Ex. 2, Workman Declaration, ¶8.

---

[3] According to Jennifer Workman ("Workman"), St. John's Senior Director of Human Resources, physicians had notified DeLuca that Plaintiff had issues with efficiency in rooming patients and performing other work at the necessary levels, and they expressed concerns that her slow performance impacted their ability to timely perform evaluations and procedures. *Id.*, Ex. 2, Workman Declaration.

On or about September 28, 2018, during Plaintiff's third leave, St. John Human Resources Advisor Janet Lowe ("Lowe") sent Plaintiff a letter informing her that she had exhausted her FMLA, that St. John needed to fill her position, and that it was providing her four weeks of unpaid leave to find another position within St. John Health System." *Id.*, Ex. 3, Letter from Janet Lowe to Plaintiff.  The letter stated that "[f]ailure to communicate with the office manager/HR about RTW ("Return to Work") status or locating a new position, will result in your termination with the Health System in four weeks after the RTW date." *Id.*

The letter was returned to sender, and thereafter—according to St. John records—Ms. Lowe called Plaintiff and left a detailed message explaining the contents of the letter. *Id.* Ex. 2, Jennifer Workman Affid., ¶9.   Although Plaintiff claims she applied for several positions online, St. John has no record of any applications having been submitted by her.  *Id.*, ¶12.

By December 16, 2018, Plaintiff had exhausted all leave, she had not applied for any other positions, there was no indication if and/or when she would return to work and—as St. John had previously told Plaintiff—her position had to be filled due to business needs. *Id.*, Ex. 2, Workman Affid., ¶¶8-10, 21.  Accordingly, St. John terminated her employment.  *Id.*, Ex. 2 at ¶¶9-11, ¶19; Ex. 3.

Plaintiff has not worked since the termination of her employment from St. John. *Id.* at 55:1-6.  She understands that her disability is permanent and that she will never be able to work as a Medical Assistant again.  *Id.* at 163:20-23.

Plaintiff testified that no one at St. John ever made any racially derogatory or negative comment to her, or any comments about her national origin.  *Id.* at 219:12-17, 235:1-3.  Plaintiff testified that until 2016, Ms. Jackson was neither inappropriate nor discriminatory towards her. *Id.* at 124:21-25.  However, she felt that starting in 2016, Ms. Jackson began following her around

in the medical clinic, was rude at times and did not always treat her with courtesy and respect.  *Id.* at 112:12-16, 113:21-116:23.  Plaintiff recounted one comment Ms. Jackson made concerning Plaintiff's origin.  According to Plaintiff, Ms. Jackson said, "I know . . . you are not from here. You have an accent.  You are not from here." *Id.* at 181:10-18.

St. John did not hire a replacement for Plaintiff's position until January 16, 2019—one month after Plaintiff's departure.  The replacement employee also identifies as African American. *Id.*, ¶21.

After Plaintiff's termination in December 2018, she applied for disability benefits, stating under oath that she had been unable to work since she became disabled in 2018.  *Id.*, Ex. 1, Norty Dep. at 240:4-14; 84:13-85:18.  Plaintiff testified that her disability is the pain she has in her right shoulder, elbow and wrist.  *Id.*, Ex. 1, 244:9-25.  Her disability makes it difficult to groom, dress, bathe, cook, or drive, and she is unable to type.  *Id.* at 245:8-247:3.

The Social Security Administration determined that Plaintiff's disability is permanent and awarded her Social Security Disability Insurance ("SSDI") benefits.  *Id.* at 245:15-20, 248:11-13. Plaintiff's benefits were retroactive to when she allegedly became disabled in 2018, but due to the unemployment benefits she received, the SSDI benefits commenced in 2019.  *Id.* at 86:13-25, 250:4-14.  As of the filing of St. John's summary judgment motion, Plaintiff had received at least one year of benefits, going back to 2019.  *Id.* at 249:10-250:3.  She has not worked since the termination of her employment from St. John.  *Id.* at 55:1-6.

Plaintiff identified three other employees as purported comparators:  a Caucasian named "Debbi," an African American named "Julia," and an African American named "Claudette." Plaintiff complained that Debbie was given different light duty when she returned from neck surgery, but she was not aware of what Debbie's restrictions were following a neck surgery.  *Id.*,

6

Ex. 1, Nortey Dep. at 224:18-227:2.  Plaintiff identified Julia as a comparator, but was not aware

of what Julia's restrictions were after having carpal tunnel surgery.  *Id.* at 227:6-16, 228:16-18.

She testified that Claudette was treated more favorably than her because she was permitted to call

in "all the time."  *Id.* at 227:22-228:1.

On February 4, 2019, Plaintiff filed a Charge of Discrimination alleging she had been

discriminated against because of her race, national origin and disabilities, and that she had been

retaliated against—all in violation of Title VII of the Civil Rights Act of 1964 and the Americans

with Disabilities Act of 1990.  *Id.*, Ex. 4.[4]

## IV. Analysis

### A. Claims Against Medical Center

Title VII and the ADA provide employees protection from discrimination and retaliation

by an employer.  42 U.S.C. §2000e *et seq.*,  42 U.S.C.§ 12111 *et seq.*  The Declaration of Jennifer

Workman establishes that Plaintiff was never employed by the Medical Center.  *Id.*, Ex. 2,

Workman Dec.¶3.  Moreover, the Medical Center was not named as an employer in her Charge

and therefore, Plaintiff cannot establish that she has exhausted her administrative remedies.

Accordingly, the Medical Center is entitled to summary judgment in its favor on Plaintiff's

claims against it.

### B. Claims Against St. John

#### 1.  Disability, National Origin and Race Discrimination Claims

Each of Plaintiff's discrimination claims require her to establish, *inter alia*,  that she was

able to perform the essential functions of the job with or without reasonable accommodation.  *See*

---

[4] In her Amended Complaint, Plaintiff states that she timely filed charges with the U.S. EEOC,
received her Notice of Right to Sue, and timely commenced this action.  *Id.*, Doc. 25.

*Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (disability discrimination) ; *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012) (race and/or national origin discrimination). Under each of Plaintiff's claims, once she establishes a *prima facie* case of discrimination, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its action. *Kilcrease v. Domenico Transp. Co.*, 828 F.3d 1214, 1220 (10th Cir. 2016) (stating that "ADA discrimination claims are generally subject to the *McDonnell Douglas* burden-shifting framework adapted from Title VII discrimination caselaw").

St. John argues that Plaintiff's claims of discrimination based on disability, national origin, and/or race fail as a matter of law. Specifically, it contends that Plaintiff cannot make a *prima facie* case of discrimination because:

- she cannot establish she was able to perform the essential functions of the job or was "qualified" to work;

- she cannot establish that she was terminated under circumstances that give rise to an inference of discrimination under the ADA, Title VII or Section 1981; and.

- She has not presented any evidence of pretext to dispute St. John's legitimate, nondiscriminatory reason for termination.

### a. Ability to Perform Essential Job Functions

To establish a *prima facie* case of disability discrimination, plaintiff must demonstrate (1) that she is a disabled person within the meaning of the ADA, (2) that she is able to perform the essential functions of the job, with or without reasonable accommodation, and (3) that the employer terminated her employment under circumstances giving rise to an inference that the termination was based on her disability. *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). Similarly, with respect to a claim of discriminatory discharge based on race and/or national origin under Title VII or Section 1981, Plaintiff must make a *prima facie* showing that she (1) was a member of a protected class; (2) was qualified and satisfactorily performing her job; and (3) was

8

terminated under circumstances giving rise to an inference of discrimination.  *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012).

The elements of "performing the essential functions of the job" for purposes of establishing an ADA claim and being "qualified for her job" for purposes of establishing a Title VII discrimination claim" are similar, and courts have treated them as interchangeable.  *Myers v. Knight Protective Serv., Inc.*, 774 F.3d 1246, 1248 (10th Cir. 2014).

St. John argues that—assuming for the sake of the pending motion, that Plaintiff can show her wrist pain and carpel tunnel syndrome constitute disabilities under the ADA—she cannot show she could perform the essential functions of her job with or without accommodation, because (1) shortly after her termination, she applied for disability benefits with the SSA, declaring under oath that she had been unable to work due to disability since 2018, and (2) subsequently, she was awarded SSDI benefits, which she continues to receive, and (3) she admits that she is permanently and totally disabled.   Ex. 1, Nortey Dep. at 250:4-14, 245:15-20, 248:11-13, 247:4-7.

The Supreme Court has stated that "a plaintiff's sworn assertion in an application for disability benefits that she is . . . 'unable to work' will appear to negate an essential element of her ADA case" and accordingly, it has held that "an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim" and "must proffer a sufficient explanation" for the contradictory evidence."  *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999). *See also*, *Hawkins v. Schwan's Home Service, Inc.*, 2013 WL 2368813, at *10 (W.D. Okla. May 28, 2013 (finding that Plaintiff was judicially estopped from claiming he was a "qualified individual with a disability" under the ADA).

Plaintiff has proffered no explanation for the contradiction between her SSDI total disability claim and the ADA claim she asserts in this case. Moreover, in her deposition, Plaintiff

admitted that her disability is permanent and that she has not attempted to return to work, nor does she intend to do so. Doc. 59, Ex. 1, Nortey Dep. at 55:1-6, 163:20-23, 245:15-20, 248:11-13.

The Court concludes Plaintiff has failed to establish that she was able to perform the essential functions of her job or that she was qualified to perform her duties as a Medical Assistant. Accordingly, Plaintiff cannot establish a *prima facie* case of discrimination regardless of whether her claim is based upon national origin, race, or disability—and whether based upon the ADA, Title VII or Section 1981.

## 2. Retaliation Claim

To establish a *prima facie* case of retaliation, Plaintiff must show (1) protected employee action; (2) adverse action by an employer either after or contemporaneous with the employee's protected action; and (3) a causal connection between the employee's action and the employer's adverse action. *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997). If a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to show that it had a legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 1323. "If a defendant states a legitimate non-discriminatory reason for the action, the burden then reverts to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reasons for the challenged action is pretextual—*i.e.*, unworthy of belief." *Id.* (internal quotation marks and citation omitted).

Pretext may be established by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence that the employer did not act for the asserted non-discriminatory reasons." *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005). A plaintiff may show pretext by

10

demonstrating that she was "treated differently from other similarly-situated, nonprotected employees who violated work rules of comparable seriousness" *Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1232 (10th Cir. 2000).  However, a court must look at "the facts as they appear to the person making the decision to terminate, not the aggrieved employee." *Piercy v. Maketa*, 4380 F.3d 1192, 1200 (10th Cir. 2007).  "The relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [it] honestly believed those reasons and acted in good faith upon those beliefs. "*Rivera v. City & Cnty. Of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004).

Plaintiff has presented no evidence to support a conclusion that she was terminated for anything other than her permanent medical restrictions, which prevented her from coming to work and performing the essential functions of her position.  It is uncontroverted that she is totally and permanently disabled and unable to perform any work at all.  Likewise, she has failed to offer any evidence suggesting that any of the decision makers harbored discriminatory animus toward her.

Plaintiff contends she can identify similarly situated Caucasian employees who were permitted to "call in" if they wanted and were not terminated after having carpal tunnel issues.  A plaintiff may show pretext by demonstrating that she was "treated differently from other similarly-situated, nonprotected employees who violated work rules of comparable seriousness." *Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1220, 1232 (10th Cir. 2000). In order for other employees to be proper comparators, Plaintiff must identify individuals outside her protected class who were similarly situated in all relevant respects—particularly that they had the same supervisor, the same work histories and the same restrictions and needs as Plaintiff, but were treated more favorably than Plaintiff.  *See Hartwell v. Sw. Cheese Co., L.L.C.*, 2017 WL 944125, at *11 (D.N.M. Jan. 23, 2017); *Henderson v. Int'l Union*, 263F. Supp. 23d 1245, 1293 (D. Kan. 2003) (granting summary

judgment against plaintiff on disability discrimination claim where plaintiff failed to show "either intentional discrimination or evidence that plaintiff was treated differently than similarly situated" union members).

Plaintiff, however, has admitted she did not know what those purported comparators' restrictions were, and two of the comparators she identified were—like her—African Americans. Doc. 59, Ex. 1, Nortey Dep. at 224:18-228:18.

The only "evidence" of pretext proffered by Plaintiff is the remark by a coworker—who was not a decision maker in the termination of Plaintiff's employment—regarding Plaintiff's accent. However, in *Baltazar v. Shinseki*, 485 Fed. Appx. 941, 947 (10th Cir. 2012), the court held that a similar comment by a supervisor during a performance review did not support the plaintiff's claim that she was terminated because of her national origin rather than her deficient performance. The court observed that the plaintiff had not argued the comment was made in a derogatory manner, and plaintiff's own expert had testified that she was "somewhat hard to understand" and had difficulty "expressing herself in English." *Id.* It stated that "[m]ore importantly . . . Baltazar has presented no evidence that the coworker who made the statement was involved in the decision to terminate her." *Id.*

Here, as in *Baltazar*, Plaintiff has failed to present any viable evidence of pretext.  In contrast, St. John has provided evidence that it had a valid business need to fill her position, Plaintiff had exhausted her Family and Medical Leave Act and paid time off benefits, and she did not apply for other jobs within the St. John System, as suggested by St. John.  Accordingly, the Court concludes that St. John is entitled to summary judgment against Plaintiff with respect to her retaliation claim.

### 3. Harassment Claim

To establish a claim for harassment or hostile work environment, a plaintiff must prove (1) membership in a protected group, (2) unwelcome harassment, (3) that the unwelcome harassment was based on plaintiff's membership in the protected group, and (4) altered employment conditions. *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 797 (10th Cir. 1997). Additionally, the plaintiff must show the work environment was both objectively and subjectively hostile based on the totality of the circumstances. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22. Title VII is not a "general civility code," nor is meant to redress "the ordinary tribulations of the workplace." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999). In order for Plaintiff to prevail on her claim, she must show "that the discrimination was sufficiently severe or pervasive to alter the terms of conditions of [her] employment and created an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).

As previously noted, Plaintiff complains of one comment made by Jackson pertaining to her accent. Courts have held that such comments do not constitute "severe" or "pervasive" conduct for purposes of establishing a *prima facie* harassment claim. *See McBride v. Peak Wellness Ctr., Inc.*, 688 F.3d 698, 712 n.7 (10th Cir. 2012) (isolated remark does not constitute evidence of hostile work environment); *Dunlap v. Kansas, Dep't of Health & Env't*, 211 F.Supp.2d 1334, 1341 D. Kan. 2002), *aff'd*, 127 Fed. App'x 433 (10th Cir. 2005) (incidents in which a supervisor would pretend not to understand the Plaintiff's accent were insufficient to show an objectively hostile or abusive work environment").

The Court concludes that the coworker's comment/question about Plaintiff's accent did not constitute "severe" or "pervasive" conduct creating a hostile or abusive work environment.

### 4.   Failure to Accommodate Claim

Plaintiff's Second Amended Complaint does not expressly assert a failure to accommodate claim.  Doc. 25.  However, Defendants contend that to the extent Plaintiff is asserting such a claim, it also fails.

"Title I of the ADA requires a plaintiff to exhaust her administrative remedies before filing suit," and "[i]n the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to suit." *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007). "To exhaust administrative remedies, an individual claimant must: (i) first and timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge; and (ii) receive notice of the right to sue. *Shay v. RWC Consulting Group*, 2014 WL 3421068, at *15 (D.N.M. June 30, 2014) (citing *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999); 42 U.S.C. §2000e-5(b), (c), (e), (f)(1).

Plaintiff's Charge does not include any allegations that she requested an accommodation for her alleged disabilities, that her disabilities impacted her job performance, or that St. John failed to accommodate any alleged disabilities.  Doc. 59, Ex. 4.  As a result, she failed to exhaust her administrative remedies.  *See* 29 C.F.R. §1630.9 (stating that covered employers must "make reasonable accommodation to the known physical or mental limitations of an otherwise qualified . . .employee with a disability," though not when the employee is merely "regarded" as disabled.). Plaintiff failed to administratively allege that she was suffering from a disability that impacted her ability to perform her job, much less that she requested an accommodation for the disability, or that St. John failed to accommodate any alleged disabilities, she has not administratively exhausted such a claim.  *See Ainsworth v. Indep. Sch. Dist. No. 3 of Tulsa County, Okla.*, 232 F3d Appx. 765, 777 (10th Cir. 2007) (unpublished) (holding that plaintiff's failure to assert an accommodation

claim at the administrative stage resulted in a failure to exhaust his administrative remedies and, accordingly, the district court lacked subject matter jurisdiction).

Moreover, like claims of discrimination under the ADA and Title VII, in order to state a *prima facie* case of failure to accommodate disability discrimination, a plaintiff must establish (1) that she was disabled within the meaning of the statutory definition; (2) she was qualified to perform the essential functions of the job, either with or without reasonable accommodation; and (3) she was discriminated against because of her disability. *Aldrich v. Boeing Co.*, 146 F.3d 1265, 1269 (10th Cir. 1998). However, based upon her representations to the SSA and her resulting receipt of SSA disability benefits, Plaintiff is not "qualified to perform the essential functions of her job," and accordingly, she cannot state a claim for failure to accommodate. Furthermore, the evidence establishes that St. John attempted to accommodate her restrictions by assigning her to phone duties, and while plaintiff was dissatisfied with the assignment, it is well settled that "the ADA requires an employer to provide a 'reasonable accommodation, not the accommodation [the employee] would prefer.'" *Selenke v. Med. Imaging of Colorado,* 248 F.3d 1249, 1263 (10th Cir. 2001) (quoting *Rehling v. City of Chicago*, 207 F.3d 1009, 1014 (7th Cir. 2000)).

The evidence establishes that St. John provided Plaintiff with a "reasonable accommodation." Accordingly, St. John is entitled to summary judgment in its favor on Plaintiff's claims.

### V. Conclusion

The Motion for Summary Judgment filed by defendants St. John Medical Center, Inc. and Ascension St. John d/b/a St. John Health System, Inc. (Doc. 59) is hereby granted.

ENTERED this 26th day of October, 2021.

TERENCE C. KERN
United States District Judge